## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

HAKEEM DANNETT,
*Plaintiff,*

v.                                                        No. 3:23cv1598 (OAW)

C.O. CONRAD, et al.,
*Defendants.*

## <u>INITIAL REVIEW ORDER</u>

Self-represented Plaintiff Hakeem Dannett is an unsentenced inmate housed at MacDougall-Walker Correctional Institution in the custody of the Department of Correction ("DOC").[1]  ECF No. 1.  Plaintiff has asserted claims under 42 U.S.C. § 1983 against DOC Commissioner John Doe and the following DOC employees, each of whom worked at Corrigan-Radgowski Correctional Center ("Corrigan") for the relevant period: Correction Officer Conrad, Unit Manager Maura Atkinson, Warden Martin, Deputy Warden Foote, Counselor MacAlvin, and Lieutenant Doe.[2]  He asserts violations of his constitutional and federal rights[3] and he seeks damages and injunctive relief.

The Prison Litigation Reform Act requires federal courts to review complaints brought by prisoners seeking relief against a governmental officer, governmental entity,

---

[1] The court may "take judicial notice of relevant matters of public record."  *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).  The publicly available information on the Connecticut DOC website shows that Plaintiff is unsentenced.  *See* "Department of Correction: Inmate Information," available at http://www. ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=436612 (last visited August 8, 2024).

[2] Plaintiff does not list Lieutenant Doe in the case caption. Rule 10 of the Federal Rules of Civil Procedure states that "[t]he title of the complaint must name all the parties."  Fed. R. Civ. P. 10(a).  A court may find a *pro se* complaint to plead claims against a defendant not named in the caption when there are adequate factual allegations to establish that the plaintiff intended that individual to be a defendant.  *See Imperato v. Otsego County Sheriff's Depart.*, 2016 WL 1466545, at *26 (N.D.N.Y. April 14, 2016).  As Plaintiff lists Lieutenant Doe in his list of parties, the court will consider whether he has alleged sufficient facts to support any plausible claim against Lieutenant Doe.

[3] He also asserts state tort claims, which the court will not discuss herein.

or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  Upon review, the court must dismiss a complaint, or any portion of a complaint, that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  The court has conducted an initial review of Plaintiff's claims in accordance with statute.

## I.   **ALLEGATIONS**[4]

Herein, the court summarizes relevant allegations from the complaint for context, noting that certain detailed allegations on pages nine and ten are difficult to discern due to the poor quality (faintness) of the copy.[5]  *See* ECF No. 1 at 9 (¶ 20), 10 (¶¶ 21-26).

While housed at Corrigan, Plaintiff was subjected to a tattoo search by Defendant Conrad, who was reportedly acting upon Defendant Martin's orders.  Defendant Conrad told Plaintiff to strip in an unauthorized strip area and then sexually assaulted him by digitally penetrating his anus.

Plaintiff was taken to segregation, where he asked Defendant Atkinson to call the Prison Rape Elimination Act ("PREA") hotline, but he was too ashamed to discuss with the operator what had happened.  Defendant Atkinson brought Plaintiff an inmate statement form, but again, he was too ashamed to describe the assault.  He resolved to ignore the event.

Plaintiff could not ignore it, though, and he experienced mental distress.  After he informed a mental health staff member about the sexual assault, she stated that she

---

[4] All factual allegations are drawn from the complaint and are considered true for purposes of this review.
[5] To the extent that Plaintiff believes the court did not consider all of his allegations, he may file an amended complaint.

2

would make DOC officials aware of the situation. He later spoke to Counselor Supervisor Dumas and Unit Manager Lieutenant Peau, who indicated that the Connecticut State Police would be contacting him.  But Plaintiff did not hear from the police.

He later reached out to Defendants Foote and Martin.  Defendant Martin stated that he was aware of the situation and had handled it.  Plaintiff was confused by the response and asked about the failure of the police to contact him.  Defendant Martin stated that Plaintiff's interview statement on file was not sufficient for a PREA claim.  After Plaintiff explained that he did not say anything at first, but that he wanted to address the conduct now, Defendant Martin informed him that nothing was going to happen.  No investigation was conducted, though DOC administrative directives provide that an investigation should have occurred.

Plaintiff later explained the incident to Defendant MacAlvin and expressed that he wanted to press charges.  Defendant MacAlvin indicated that he would not assist Plaintiff to press charges against his friends and co-workers.

Plaintiff claims that Defendants Atkinson, Foote, Martin, MacAlvin, and Does all turned a "blind eye."  Plaintiff has written to mental health staff, the Deputy Warden, the Warden, and the DOC Commissioner.  They have all dismissed his request to review the handheld camera footage of the strip search.

## II.   LEGAL STANDARD

"Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir.

1999).  Plaintiff claims Defendants have violated his rights under the Eighth Amendment, the Fourteenth Amendment's Due Process Clause, and PREA.  The court also considers whether Plaintiff has alleged a plausible violation of his Fourth Amendment rights.

Plaintiff must allege facts to reflect that any defendant against whom he seeks damages was involved personally in the alleged constitutional violation.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991) (internal quotation marks omitted).  As the United States Court of Appeals for the Second Circuit has clarified, "there is no special rule for supervisory liability . . . ."  *Tangreti v. Bachman*, 983 F.3d 609, 618 (2d Cir. 2020).  Thus, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against a state official without relying on supervisory liability.  *Id.* at 620.

III.   **DISCUSSION**

A. **Fourth Amendment**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  Inmates "retain a limited right of bodily privacy under the Fourth Amendment."  *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016).

To determine whether an isolated search infringed on an inmate's right of bodily privacy and thus was unreasonable, a court must consider four factors: "[1] the scope of the intrusion; [2] the manner in which it was conducted; [3] the justification for initiating it;

4

and [4] the place in which it was conducted."  *Id.* at 58 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)) (alterations in original).

Generally, strip searches related to legitimate security interests have been upheld as reasonable.  *See, e.g.*, *Smith v. City of New York*, No. 14 CIV. 5934 JCF, 2015 WL 3929621, at *3 (S.D.N.Y. June 17, 2015) (upholding strip searches in "situations where the legitimate purpose of preventing the import or export of contraband is clear."). However, a strip search is unreasonable "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish."  *Jean–Laurent v. Wilkerson,* 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (concluding that the plaintiff sufficiently alleged that a strip search was unreasonable where "the verbal and physical abuse that allegedly accompanied the strip search support[ed] a finding that the search was designed to harass and intimidate).

Here, Plaintiff alleges that a tattoo strip search by Defendant Conrad exceeded a legitimate penological purpose and was intended to punish and harass Plaintiff. Accordingly, the court will permit Plaintiff to proceed on a claim of Fourth Amendment violation against Defendant Conrad in his individual capacity for damages.

## B. Fourteenth Amendment Misuse of Force

Plaintiff asserts that he was subjected to cruel and unusual punishment, which accusation the court construes as a claim for misuse of force or sexual abuse in violation of the Fourteenth Amendment's Due Process Clause.

A pretrial detainee's claim of sexual abuse is governed by the Due Process Clause of the Fourteenth Amendment, and not by the Eighth Amendment, since "[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any

manner—neither cruelly and unusually nor otherwise.'" *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007)) (alteration in original).  Generally, protections under the Fourteenth Amendment are "at least as great as the Eighth Amendment protections available to a convicted prisoner."  *Id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

"The appropriate standard for a pretrial detainee's [misuse of] force claim is solely an objective one."  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).  In other words, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Id.* at 396–397.  A court's consideration of "objective unreasonableness" may include the "relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting," though this list is not exclusive.  *Id.* at 397.  But a claim that a pretrial detainee suffered harm or injury due to the accidental or negligent conduct of a prison official does not rise to the level of a Fourteenth Amendment Due Process Clause violation.  *Id.* at 396.

For purposes of initial review, the court concludes that Plaintiff's allegations are sufficient to support a claim of a Fourteenth Amendment violation based on Defendant Conrad's misuse of force or sexual abuse during the search.  The court will permit this claim to proceed against Defendant Conrad for further development of the record.

## C. Fourteenth Amendment Failure to Intervene

Plaintiff claims that Defendants Atkinson, MacAlvin, Martin, Foote, and Does turned a "blind eye" to Defendant Conrad's violative conduct.

Prison officials can be held liable under § 1983 "for failing to intervene in a situation where another official is violating an inmate's constitutional rights . . . in their presence." *Abreu v. Bascue*, No. 9:18-CV-0186 (MAD/ATB), 2018 WL 11466956, at *13 (N.D.N.Y. May 1, 2018).  Prison corrections officers can be liable for failure to intervene if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Delano v. Rendle*, No. 9:13-CV-00070 (NAM/TWD), 2016 WL 4146476, at *11 (N.D.N.Y. July 12, 2016), *report and recommendation adopted*, No. 9:13-CV-70 (NAM/TWD), 2016 WL 4133542 (N.D.N.Y. Aug. 3, 2016) (quoting *Jean-Laurent*, 540 F. Supp. 2d at 512).

Plaintiff has not alleged any facts—as far as this court can discern—suggesting that Defendants Atkinson, MacAlvin, Martin, Foote, or Does were present or had any opportunity to prevent any misuse of force or sexual abuse during the strip search.  Nor do Plaintiff's allegations indicate that any of these defendants were personally involved in the conduct at issue.  Plaintiff cannot hold defendants liable unless they violated his constitutional rights through their "own individual actions."  *Harnage v. Dzurenda*, No. 3:14-CV-885 (SRU), 2022 WL 972438, at *8 (D. Conn. Mar. 31, 2022) (quoting *Tangreti*, 983 F.3d at 618).  Thus, the court must dismiss as implausible any Fourth or Fourteenth Amendment claims based on the assault itself against Defendants Atkinson, MacAlvin, Martin, Foote, and Does.  *See* 28 U.S.C. § 1915A(b)(1).

### D.  Fourteenth Amendment Failure to Protect

Plaintiff also claims that Defendants failed to protect him from Defendant Conrad's assault.  The Due Process Clause of the Fourteenth Amendment governs such claims

brought by pretrial detainees.  *Darnell*, 849 F.3d at 29; *Haslinger v. Westchester Cnty.*, No. 7:18-CV-05619 (PMH), 2020 WL 2061540, at *7 (S.D.N.Y. Apr. 29, 2020).  A failure to protect claim is a type of challenge to the conditions of confinement, and such a claim requires a plaintiff to show first, that he was incarcerated "under conditions posing a substantial risk of serious harm," and second, that a prison official showed "deliberate indifference to inmate health or safety."  *Haslinger*, 2020 WL 2061540 at *7 (quoting *Rembert v. Cheverko*, No. 12-CV-9196 KBF, 2014 WL 3384629, at *5 (S.D.N.Y. July 10, 2014).  As to the first prong of a deliberate indifference claim, the plaintiff must show that the conditions he experienced "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health."  *Darnell*, 849 F.3d at 30.  And as to the second prong, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Id.* at 35.  Negligence is insufficient to satisfy this component.  *Id.* at 36.

Plaintiff's supporting allegations with respect to this claim are vague.  To the extent he claims that Defendants acted with deliberate indifference to the risk that Defendant Conrad would assault him, Plaintiff has not alleged facts to raise an inference that Defendants had or should have had any suspicion that Defendant Conrad would harm Plaintiff.  Nor is there any allegation to suggest that Defendants intentionally or recklessly ignored Plaintiff's complaints of mental suffering or prevented his access to mental health treatment.

Plaintiff complains that Defendants Foote and Martin and the Commissioner ignored his request that they review the handheld footage, and failed to investigate as required by DOC administrative directives.  But an inmate has no constitutional right to an investigation by government officials.  *Banks v. Annucci*, 48 F. Supp. 3d 394, 414 (N.D.N.Y. 2014); *see also Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) ("[P]risoners do not have a due process right to a thorough investigation of grievances"). Likewise, "allegations that a prison official violated the procedures set forth" in an administrative directive or other policy "do not state a claim of a violation of an inmate's constitutional rights."  *Olivencia v. Pun*, No. 3:21CV00739 (KAD), 2021 WL 3173137, at *4 (D. Conn. July 27, 2021).

Nor can Plaintiff support a Fourteenth Amendment violation due to a Defendants' failure to contact the Connecticut State Police to press charges.  "Prisoners have no constitutional right to have correctional staff contact the state police on their behalf." *Morales v. Quiros*, No. 3:23-CV-975 (OAW), 2023 WL 6516407, at *2 (D. Conn. Oct. 5, 2023).  Absent any additional allegation that Plaintiff himself could not contact the police, or that Defendants prevented him from doing so, there is no constitutional violation in Defendants' declining to do so.  *See id.*; *Ramirez v. Allen*, No. 3:17-CV-1335 (MPS), 2017 WL 4765645, at *11 (D. Conn. Oct. 20, 2017) (dismissing a similar claim where the plaintiff "allege[d] only that the defendants did not call the state police on his behalf" and not "that he was prevented from calling or writing to the state police to report his allegations.").

Accordingly, Plaintiff's claims of deliberate indifference to his safety are dismissed as not plausible.  *See* 28 U.S.C. § 1915A(b)(1).

## E. **PREA Violation**

Plaintiff claims that Defendants violated his PREA rights.  But PREA "does not create a private right of action for [prisoners]."  *Abrams v. Erfe*, No. 17 Civ. 1570 (CSH), 2018 WL 691714, at \*16 (D. Conn. Feb. 2, 2018) (quoting *White v. Doe*, 16 Civ. 1874 (JAM), 2017 WL 2562845, \*5 (D. Conn. Jun. 13, 2017) (alteration in original); *Jones v. Forbes*, No. 16 Civ. 14 (VAB), 2016 WL 4435081, at \*3 (D. Conn. Aug. 19, 2016) ("There is nothing in the PREA that suggests that Congress intended to create a private right of action for inmates to sue prison officials for non-compliance with the Act."); *see also Brown v. Rose*, No. 16 Civ. 229 (JCH), 2018 WL 3637474, at \*7 (D. Conn. July 31, 2018) (dismissing the plaintiff's PREA claim because "PREA does not create a private right of action for prisoners . . . .").

Accordingly, Plaintiff cannot state a cognizable PREA claim for relief and any such claims must be dismissed.

## F. **Official Capacity Relief**

Plaintiff requests official capacity relief, but he cannot recover monetary damages against Defendants (who are state employees) in their official capacities because such claims are barred by the Eleventh Amendment.  *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Plaintiff may proceed against Defendants in their official capacities only to the extent that he seeks prospective relief for an ongoing violation of federal law.  *See Ex parte Young*, 209 U.S. 123, 155-56 (1908); *see also In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("[A] plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from

violations of federal law.").  When a party sues a state official in his or her official capacity, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief and may not include a retroactive award which requires the payment of funds from the state treasury."  *Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (internal citations omitted).

Plaintiff requests injunctive orders for his release from segregation, transfer to another facility, and separation profiles to keep him away from all Defendants in this action.  Plaintiff apparently already has been transferred (as he currently is housed at MacDougall), so that request has been mooted.  And the complaint alleges a single instance of sexual assault, not an ongoing constitutional violation.  Thus, Plaintiff has failed to support any claims for official capacity relief, and those also must be dismissed.

## IV.   <u>ORDERS</u>

For the foregoing reasons, it hereby is **ORDERED AND ADJUDGED** as follows:

The case shall proceed on Plaintiff's individual capacity claims for damages against Defendant Conrad for the alleged violation of Plaintiff's Fourth Amendment and Fourteenth Amendment rights.

All other claims, including official capacity claims, are DISMISSED.  Defendants Atkinson, MacAlvin, Martin, Foote, Commissioner Doe, and Lieutenant Doe are DISMISSED from this action.

Plaintiff has two options as to how to proceed in response to this Initial Review Order:

(1) If he wishes to proceed immediately on the Fourth and Fourteenth Amendment claims against Defendant Conrad in his individual capacity, Plaintiff shall file a notice on or before **October 30, 2024**, informing the court that he elects to proceed with service as to these claims.

(2) Alternatively, if Plaintiff wishes to replead any of the claims that have been dismissed, he may file an amended complaint by **October 30, 2024.**  An amended complaint, if filed, will completely replace the original complaint, and the court will not consider any allegations made in the original complaint in evaluating any amended complaint.  The court will review any amended complaint to determine whether it may proceed to service of process on any defendants named therein.  If Plaintiff elects to file an amended complaint, no defendant will be served with process until the court performs an initial review of that amended complaint.

If the court receives no response from Plaintiff by **October 30, 2024**, the court will presume that Plaintiff wishes to proceed as to the claims permitted to go forward in this order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner thereafter.

**IT IS SO ORDERED** at Hartford, Connecticut, this 8th day of August, 2024.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE